**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| STEPHEN M.,[1] | : | Case No. 3:22-CV-00026 |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

---

**DECISION AND ORDER**

---

Plaintiff filed an application for Disability Insurance Benefits in August 2018.

Plaintiff's claim was denied initially and upon reconsideration. After a hearing at

Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not

eligible for benefits because he was not under a "disability" as defined in the Social

Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff

subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award

of benefits or, in the alternative, for further proceedings. The Commissioner asks the

Court to affirm the non-disability decision. For the reasons set forth below, this Court

AFFIRMS the Commissioner's decision.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

## I.    BACKGROUND

Plaintiff asserts that he has been under a disability since August 21, 2017. At that time, he was fifty-five years old. Accordingly, Plaintiff was considered a "person of advanced age" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(e). Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," ECF No. 8) is summarized in the ALJ's decision (*id.*, PageID 38-48), Plaintiff's Statement of Errors ("SE," ECF No. 11), and the Commissioner's Memorandum in Opposition ("Mem. in Opp.," ECF No. 13). Plaintiff did not file a Reply. Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.    STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social

Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651

3

(6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.    FACTS

### A.    The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520.  The ALJ made the following findings of fact:

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful activity since August 21, 2017, the alleged onset date. |
| Step 2: | He has the severe impairments of coronary artery disease, congestive heart failure, mild kidney disease, residuals of a right rotator cuff tear, and obesity. |
| Step 3: | He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | His residual functional capacity (RFC), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: "(1) frequent crouching, crawling, kneeling, stooping, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; |

4

(4) no operation of automotive equipment; and (5) occasional overhead reaching with the right upper extremity."

Plaintiff is capable of performing past relevant work as a chief executive officer, senior vice president, consultant, and manager of computer operations as the jobs are generally performed in the national economy.

(AR, ECF No. 8-2, PageID 40-47.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and is not entitled to benefits. (*Id.*, PageID 47-48.)

## B. The ALJ's Evaluation of Plaintiff's Depression

The ALJ found that Plaintiff's depression is non-severe. (AR, ECF No. 8-2, PageID 41.) The ALJ explained that he considered the "paragraph B" criteria and concluded that Plaintiff's depression caused no more than mild impairment in any of the functional areas. (*Id.*) The ALJ explained that the examination findings and opinion of the consultative psychologist, the State agency psychological consultant's assessment, and Plaintiff's reports of his daily activities supported his conclusions:

The claimant's medically determinable mental impairment of depression does not cause more than minimal limitation on the claimant's ability to perform basic mental work activities and is therefore non-severe (Exhibit 11F). In making this finding, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.

As for the "paragraph B" criteria, the undersigned finds that the claimant has a moderate limitation in understanding, remembering. or applying information, a moderate limitation in interacting with others, a moderate limitation in concentrating, persisting, or maintaining pace, and a moderate

limitation in adapting or managing oneself.[2] These findings are supported by the opinion of the Division of Disability Determination (DDD) consultative examiner, Richard Sexton, Ph.D., who examined [Plaintiff] on August 23, 2019 (Exhibit 11F). During his examination of [Plaintiff], Dr. Sexton noted a depressed facial expression and at least average range intelligence (Exhibit 11F). Dr. Sexton diagnosed [Plaintiff] with an unspecified depressive disorder but failed to identify any functional limitations stemming from his depression (Exhibit 11F). The undersigned finds the assessment of Dr. Sexton persuasive (Exhibit 11F). His mental status exam of [Plaintiff] was entirely normal and he did not identify any specific limitations on [Plaintiff's] ability to engage in basic work activity. Dr. Sexton's exam is not indicative of a severe mental impairment. Furthermore, the assessment of the DDD reviewing psychologist, Dr. Haskins, is persuasive (Exhibits 3A and 5A). She correctly concluded that [Plaintiff] does not have a mental impairment, which is severe for Social Security purposes. Finally, these findings are supported by the claimant's statements that he performs personal hygiene and grooming, works out, goes for walks, uses a Peloton bike, travels, goes to baseball games, and fishes (Exhibits 2F/20, 3F/17, 5F/4, 10F/3 and 11F/3). In addition, he has friends, drives a car, reads and watches television (Exhibit 11F/3). Because [Plaintiff's] medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is non-severe (20 CFR 404.1520a(d)(1)).

(*Id.*)

## IV.    LAW AND ANALYSIS

Plaintiff contends that the ALJ reversibly erred because the RFC is "contrary to law and not supported by substantial evidence because it fails to account for all of the work-related limitations associated with Plaintiff's impairments." (SE, ECF No. 11, PageID 1175, 1177-87.) Plaintiff also argues that "[t]he ALJ's credibility assessment is generally defective because of the above errors, and specifically so because he neglected

---

[2] The ALJ's reference here to moderate rather than mild impairment in each of the "Paragraph B" functional areas is a harmless scrivener's error, as discussed below.

to consider Plaintiff's strong work history." (*Id.*, PageID 1175, 1187-89.) For the reasons discussed below, Plaintiff's assertions are not well-taken.

A. **The ALJ's References To "Moderate" Limitations In One Sentence Of The Decision Is A Scrivener's Error That Does Not Require Reversal**

As an initial matter, Plaintiff asserts that the ALJ erred because of his "confusing and contradictory findings regarding Plaintiff's depression." (SE, ECF No. 11, PageID 1181.) Plaintiff contends that the ALJ's statement that Plaintiff "has a moderate limitation in understanding, remembering, or applying information, a moderate limitation in interacting with others, a moderate limitation in concentrating, persisting, or maintaining pace, and a moderate limitation in adapting or managing oneself" is inconsistent with his subsequent finding that Plaintiff's depression is non-severe because it causes "no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in [Plaintiff's] ability to do basic work activities . . . ." (*Id.*, PageID 1181-82, citing AR, ECF No. 8-2, PageID 41.) The Court finds that the ALJ's references to moderate limitations in one sentence of the decision is a harmless scrivener's error.

Courts in the Sixth Circuit have held that a typographical or scrivener's error is harmless when the ALJ's meaning is clear in context. *Calkins v. Sec'y of Health & Hum. Servs.*, No. 85-5685, 1986 WL 17083, *2 (6th Cir. May 7, 1986) (holding that the district court properly "examined the opinion as a whole to interpret the true meaning of the ALJ's findings" and was not required to "ignore the real finding of the ALJ and instead blindly follow the transcriber's version of the finding."); *Barnes v. Comm'r of Soc. Sec.*,

7

No. 16-13714, 2018 WL 1474693 (E.D. Mich. Mar. 6, 2018) (finding that scrivener's errors were harmless because "the ALJ's true meaning is easily discernible for the analysis on each topic"); *Gomez v. Berryhill*, No. 3:18-cv-11738, 2019 WL 5680841, at *5 (E.D. Mich. June 11, 2019) (a typographical error did not require remand because context showed the ALJ's actual meaning).

Here, the ALJ mistakenly referred to "moderate" rather than "mild" ratings for each of the "Paragraph B" criteria in one sentence of his decision. (AR, ECF No. 8-2, PageID 41.) But the ALJ's intended meaning is clear because he stated in the preceding paragraph that Plaintiff's depression "does not cause more than minimal limitation on [Plaintiff's] ability to perform basic mental work activities and is therefore non-severe (Exhibit 11F)." (*Id.*) The ALJ subsequently explained that he found the assessments of the consultative psychologist and the State agency psychological consultant to be persuasive, and both of these sources found that Plaintiff had no more than mild mental impairment. (*Id.*) The ALJ concluded: "Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is non-severe (20 CFR 404.1520a(d)(1))." (*Id.*) The ALJ's intended meaning is therefore easily discernible, and his references to "moderate" limitations in one sentence constitute a harmless error.

## B. The ALJ's RFC Is Supported By Substantial Evidence

A claimant's residual functional capacity (RFC) is the most that he can do in a work setting despite physical and mental limitations caused by his "impairment(s), and

any related symptoms, such as pain." 20 C.F.R. § 404.1545(a)(1). The ALJ is charged

with the final responsibility for assessing a claimant's RFC and must base it on all

relevant evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a)(1). Relevant

evidence includes "information about the individual's symptoms and any 'medical source

statements'—i.e., opinions about what the individual can still do despite his or her

impairment(s)—submitted by an individual's treating source or other acceptable medical

sources." SSR 96-8p, 1996 SSR LEXIS 5, *5-6 (July 2, 1996). "If the RFC assessment

conflicts with an opinion from a medical source, the adjudicator must explain why the

opinion was not adopted." *Id.* at *20.

Plaintiff argues that he has mental limitations related to depression and stress that

the ALJ should have included in the RFC. (SE, ECF No. 11, PageID 1179-81.) Plaintiff

cites to testimony and complaints in the record about depression and stress, as well as

evidence that document's Plaintiff's history of a heart attack. (*Id.*) This assertion is not

well-taken because the ALJ's findings are supported by substantial evidence.

At Step Two, the ALJ found that Plaintiff's depression was not a severe

impairment. (AR, ECF No. 8-2, PageID 41.) The ALJ cited to the examination findings

documented by consultative evaluator Dr. Sexton. (*Id.*) The ALJ acknowledged that Dr.

Sexton reported that Plaintiff presented as depressed and diagnosed an unspecified

depressive disorder. (*Id.*) The ALJ balanced this evidence with the other findings that Dr.

Sexton documented, which were essentially normal and included at least average

intelligence. (*Id.*) The ALJ also considered the activities that Plaintiff reported engaging

in—including working out, using a Peloton bike, going on walks, going to baseball games, and fishing—when finding that Plaintiff's depression is non-severe. (*Id.*)

The ALJ's conclusion is supported by records that document only intermittent findings related to depression. For example, during an annual physical in April 2018, Nicholas Davis, M.D. noted that Plaintiff presented as nervous/anxious and with a dysphoric mood. (AR, ECF No. 8-7, PageID 381.) But Dr. Davis otherwise documented normal behavior, full orientation, normal judgment, and normal thought content. (*Id.*) Dr. Davis made no mental health diagnoses at that time, and did not indicate that he had recommended any treatment for Plaintiff's complaints. (*Id.*, PageID 382.)

Similarly, during a virtual visit with the Cleveland Clinic Heart Failure Clinic in June 2018, James Young, M.D. noted that Plaintiff seemed only "a bit" anxious and depressed. (AR, ECF No. 8-7, PageID 693.) Although Dr. Young did recommend an antidepressant medication a few months later in October 2018, he noted that Plaintiff's mood was better and that Plaintiff reported meditation "seem[ed] to help." (*Id.*, PageID 685.) Plaintiff also said that he would "rather not take" psychotropic medication and reported that his mental state was "quite good." (*Id.*, PageID 685-66.)

In January 2019, Plaintiff told Dr. Young that he wanted to "defer" a referral for a psychiatry consult. (AR, ECF No. 8-7, PageID 684-85.) Plaintiff also told his primary care provider in January 2019 that his mood had improved with meditation. (*Id.*, PageID 365.) Although Dr. Young indicated that Plaintiff appeared "depressed and somewhat anxious" during a virtual visit in May 2019, Plaintiff told Dr. Young at the next visit in July 2019 that his depression and mental status were "better." (*Id.*, ECF No. 8-8, PageID

10

1093, 1107.) And Plaintiff's medical providers consistently noted that he appeared alert, oriented, and in no distress. (*E.g.*, AR, ECF No. 8-7, PageID 348, 352, 366, 375, 378, 381, 385.)

The medical opinion evidence also supports the ALJ's conclusion, as the record contains no medical opinion that Plaintiff has any mental functional limitations. The ALJ evaluated Dr. Sexton's opinion and the State agency psychological consultant's findings. (AR, ECF No. 8-2, PageID 41.) Dr. Sexton found no functional limitations related to Plaintiff's depression,[3] and the State agency reviewer found that Plaintiff's depression was not "severe." (*Id.*, ECF No. 8-3, PageID 112, 1167-68.) The ALJ concluded that these assessments were persuasive. (*Id.*, ECF No. 8-2, PageID 41, 46.) The ALJ complied with applicable regulations by recognizing the consistency of the opinion evidence and discussing the examination findings that supported the opinions. (*Id.*) Notably, Plaintiff does not argue that the ALJ failed to comply with applicable regulations in his analysis of the medical opinion evidence. (SE, ECF No. 11, PageID 1179-87.)

Taken together, the evidence cited by the ALJ constitutes substantial evidence— that is, "relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (*Biestek*, 139 S. Ct. at 1154)—that supports the ALJ's finding that Plaintiff's depression was non-severe. Because the ALJ's finding is supported by substantial

---

[3] Plaintiff appears to misconstrue a clinical finding from Dr. Sexton's report as an opinion statement: Plaintiff states: "The ALJ asserted that Dr. Sexton . . . 'failed to identify any functional limitations stemming from depression.' . . . But Dr. Sexton found that Plaintiff 'demonstrated slight difficulty maintaining attention/concentration and a task focus in performing simple as well as multi-step tasks during the present evaluation." (SE, ECF No. 11, PageID 1182-83.) But as the Commissioner points out, although Dr. Sexton noted that while Plaintiff "may experience a subjective sense of reduced effectiveness" in the area of maintaining attention, concentration, persistence, and pace, he opined that "objective changes at a level prompting performance concerns by others are not to be expected." (AR, ECF No. 8-8, PageID 1168.)

11

evidence, it cannot be disturbed by this Court even if there were substantial evidence in the record that would support the opposite conclusion. *Key*, 109 F.3d at 273.

Finally, the ALJ's findings related to Plaintiff's cardiac condition are supported by substantial evidence. (AR, ECF No. 8-2, PageID 43-46.) The ALJ acknowledged Plaintiff's testimony that he experienced fatigue, shortness of breath, chest pain, dyspnea upon exertion with activity, and malaise. (*Id.*, PageID 43-45.) The ALJ compared this testimony to Plaintiff's statements in the record to his medical providers, which are not fully consistent. (*Id.*) The ALJ also summarized the medical records that documented Plaintiff's treatment for his cardiac condition. (*Id.*) The ALJ acknowledged that Plaintiff has a history of coronary artery disease and underwent a cardiac catheterization and stenting of the left anterior descending artery after he suffered an acute myocardial infarction in August 2017. (*Id.*, PageID 43.) The ALJ recognized that Plaintiff's ejection fraction at the time of his heart attack was 35%, but noted that subsequent readings ranged from 43-55%. (*Id.*, PageID 45.) The ALJ cited examinations after August 2017 that were relatively normal with normal respiratory effort, only intermittent complaints of fatigue, no edema, and no consistent chest pain complaints. (*Id.*, PageID 43-45.)

The ALJ found that on balance, the evidence did not support Plaintiff's alleged symptom severity. (AR, ECF No. 8-2, PageID 43.) The ALJ also found that Plaintiff's testimony about his limitations was not fully consistent with his statements in the record or the objective medical evidence. (*Id.*, PageID 43-45.) The ALJ accounted for this evidence by limiting Plaintiff to the reduced range of light work in the RFC. (*Id.*) This Court concludes that the ALJ's findings are supported by substantial evidence, which is

12

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S.Ct. at 1154. The Court is not permitted to weigh the evidence to determine whether it might support a different result. *Id.*

By claiming that the ALJ should have included additional limitations in the RFC because of his depression and cardiac history, Plaintiff essentially argues that the ALJ did not adequately consider the combined effects of his mental and physical impairments. (SE, ECF No. 11, PageID 1179-81.) The applicable regulation requires the ALJ to "consider the limiting effects of all [of a claimant's] impairment(s), even those that are not severe," when formulating the RFC. 20 C.F.R. § 404.1545(e); *see also* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). However, an ALJ is not required to specifically discuss the combined effects of a claimant's impairments, as "[t]o require a more elaborate articulation of the ALJ's thought processes would not be reasonable." *Gooch v. Sec'y of Health and Hum. Servs.*, 833 F.2d 589, 591-92 (6th Cir. 1987) ("[A]n ALJ's statement that he had conducted 'a thorough review of the medical evidence of record,' along with the fact that the ALJ had considered the claimant's impairments individually, sufficed to show that the ALJ had considered the impairments in combination."); *see also Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851 (6th Cir. 2020) ("[T]he ALJ's statements that she had considered the entire record and all of [the claimant's] symptoms suggest that she had considered [the claimant's] impairments in combination.")

Although the ALJ did not specifically discuss the combined effects of Plaintiff's impairments or mention his non-severe mental impairments in the RFC assessment, the ALJ thoroughly considered each of Plaintiff's impairments. (AR, ECF No. 8-2, PageID

13

40-46.) He provided a detailed discussion of Plaintiff's depression-related limitations at Step Two, and he evaluated Plaintiff's severe physical impairments in the RFC analysis. (*Id.*, PageID 41-46.) The ALJ also stated that he had considered "the entire record" and "all symptoms." (*Id.*, PageID 40, 43.) These statements suffice to show that the ALJ complied with the requirement to view Plaintiff's impairments in combination.

Finally, Plaintiff contends that because the ALJ found "mild" limitations in the Paragraph B areas of functioning, he was required to include mental restrictions in the RFC. (SE, ECF No. 11, PageID 1183.) This argument is not persuasive. The ALJ properly considered Plaintiff's non-severe mental impairments in assessing the RFC and appropriately did not include any mental limitations in the RFC.

An ALJ is required to consider the limiting effects of a claimant's severe and non-severe impairments. 20 C.F.R. § 404.1545(e). The regulation that governs the ALJ's consideration of mental disorders in the Sequential Evaluation provides that if the degree of limitation is "none" or "mild," an ALJ will generally conclude that the impairment is not severe "unless the evidence otherwise indicates that there is more than a minimal limitation" in the ability to perform basic work activities. 20 C.F.R. § 404.1520a(d)(1).

In *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190-91 (6th Cir. 2009), the Sixth Circuit held that the absence of a severe mental impairment will not always mean that it is appropriate to omit mental limitations from the RFC. In that case, the ALJ failed to follow the regulatory requirement that "[o]nce one severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would not be severe." *Id.* at 190 (citations omitted). The court also found "uncontradicted

14

objective medical evidence" that the claimant suffered limitations from her mental impairment. *Id.* at 191. The court cited to the opinions of four medical sources who found moderate limitation in several areas of work-related mental functioning. *Id.*

Here, unlike in *Simpson*, the ALJ complied with 20 C.F.R. § 404.1545(e) and adequately considered the combined effects of Plaintiff's impairments. The record also does not contain uncontradicted objective medical evidence of mental limitations, as neither the consultative psychologist nor the State agency psychological consultant found any work-related mental limitations. (AR, ECF No. 8-3, PageID 112; ECF No. 8-8, PageID 1166-68.) Indeed, the record contains no medical opinion that Plaintiff's depression causes any—much less moderate—functional limitations. The ALJ offered a thorough analysis to support his conclusions which included consideration of Plaintiff's allegations, mental status examination findings, Plaintiff's reports of daily activities, the opinions of the consultative psychologist and State agency psychological consultant, and a function-by-function discussion of the Paragraph B criteria. (*Id.*)

Because substantial evidence supports the ALJ's conclusions, his RFC assessment is within the permissible "zone of choice" and must be affirmed. *Mullen,* 800 F.2d at 545. This conclusion is consistent with several district court decisions that have held that an ALJ's finding of mild impairment in the Paragraph B areas of functioning does *not* require that mental limitations be included in the RFC. *See, e.g., Walker v. Astrue,* No. 3:11-cv-142, 2012 WL 3187862, at *4-5 (S.D. Ohio Aug. 3, 2012) (Newman, M.J.), *report and recommendation adopted,* No. 3:11-cv-142, 2012 WL 3755606 (S.D. Ohio Aug. 29, 2012) (Rose, D.J.); *Caudill v. Comm'r of Soc. Sec.*, No. 2:16-cv-818, 2017 WL

15

3587217, at \*6 (S.D. Ohio Aug. 21, 2017) (Vascura, M.J.), *report and recommendation adopted*, No. 2:16-cv-818, 2017 WL 4222983 (S.D. Ohio Sept. 21, 2017) (Smith, D.J.).

For all these reasons, the ALJ did not err by failing to include mental limitations in the RFC.

**C.     The ALJ Did Not Reversibly Err In Evaluating Plaintiff's Symptom Severity**

When an ALJ assesses a claimant's assertion that his symptoms are of disabling severity, the ALJ must consider "all of the evidence presented," including information about a claimant's prior work record, the claimant's own statements about his or her symptoms, evidence submitted by medical sources, and "observations by our employees and other persons." 20 C.F.R. § 404.1529(c)(3). However, while the ALJ is directed to consider information about a claimant's prior work record, the ALJ is "not required to explicitly discuss [a claimant's] work history when assessing his credibility." *Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 433 (6th Cir. 2016).

Plaintiff argues that the ALJ erred in his credibility analysis because he failed to consider the "critical fact" of Plaintiff's excellent work history. (SE, ECF No. 11, PageID 1187-89.) But it is well-established that this Court must give great weight and deference to an ALJ's credibility assessment.[4] *Workman v. Comm'r of Soc. Sec.*, 105 Fed. App'x 794, 801 (6th Cir. 2004). Indeed, an ALJ's credibility findings "are virtually

---

[4] The current term used for evaluating subjective complaints is "consistency" instead of "credibility." *See Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (SSR 16-3p, 2017 WL 5180304 (Mar. 16, 2016, revised and republished Oct. 25, 2017) removed the term "credibility" only to "clarify that subjective symptom evaluation is not an examination of an individual's character.").

unchallengeable" absent compelling reasons to question them. *Ritchie v. Comm'r of Soc. Sec.*, 540 Fed. App'x 508, 511 (6th Cir. 2013).

Plaintiff cites to several cases in support of his argument that the ALJ should have considered his work history as part of his credibility assessment. (SE, ECF No. 11, PageID 1188-89, citing *Hedden v. Comm'r of Soc. Sec.*, No. 1:10-CV-534, 2011 WL 7440949, at *13-14 (W.D. Mich. Sept. 6, 2011); *White v. Comm'r of Soc. Sec.*, 312 Fed. App'x 779, 789 (6th Cir. 2009); *Barney v. Comm'r of Soc. Sec.*, No. 1:08-cv-1225, 2010 WL 1027877, at *4-5 (W.D. Mich. Jan. 20, 2010); *Taybron vs. Harris*, 667 F.2d 412 (3d Cir. 1981); Rivera vs. Schweiker, 717 F.2d 719, 725 (2nd Cir. 1983); *Polaski vs. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). However, the Sixth Circuit has considered the argument raised by Plaintiff and held that ALJs are "***not*** required to explicitly discuss [a claimant's] work history when assessing his credibility." *Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 433 (6th Cir. 2016) (emphasis added). Therefore, Plaintiff's argument is not well-taken.

Moreover, the record shows that the ALJ considered Plaintiff's work history even though he did not explicitly address it in his evaluation of Plaintiff's symptom severity. The ALJ noted the opening statement from Plaintiff's lawyer at the hearing, which highlighted Plaintiff's long work history as a "high-end professional" and "hig[h] earner." (AR, ECF No. 8-2, PageID 59.) Plaintiff described his work duties, the ALJ questioned Plaintiff about his work record, and the ALJ acknowledged that Plaintiff had "quite an interesting work history" in information technology. (*Id.*, PageID 64-66.) The ALJ summarized Plaintiff's work history at Step Four of the decision. (*Id.*, PageID 47.)

And the ALJ cited Plaintiff's testimony regarding significant travel as a reason to find that he was unable to perform his past relevant work as he actually performed it. (*Id.*)

The record shows that the ALJ considered Plaintiff's work record pursuant to 20 C.F.R. § 404.1529(c)(3), and Plaintiff has not identified any compelling reason to disturb the ALJ's credibility assessment. The ALJ's evaluation of Plaintiff's symptom severity is consistent with applicable legal requirements, and his conclusions are supported by substantial evidence. This argument, too, therefore fails.

## VI.    CONCLUSION

The ALJ properly applied the governing legal framework and substantial evidence supports his conclusions. The ALJ provided reasonable explanations, supported by substantial evidence, for how he weighed the evidence—including the evidence related to Plaintiff's mental impairment—and his RFC is supported by substantial evidence. The ALJ also evaluated Plaintiff's symptom severity, or credibility, pursuant to the applicable regulations. Accordingly, the Commissioner's decision must be affirmed.

**IT IS THEREFORE ORDERED THAT**:

1.    Plaintiff's Statement of Errors (ECF No. 11) is OVERRULED;

2.    The Court AFFIRMS the Commissioner's non-disability determination; and

3.    The case is terminated on the Court's docket.

*/s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge